UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

STEWART PRICE                                    CIVIL ACTION

VERSUS                                           NUMBER: 11-0641

N. BURL CAIN                                     SECTION: "F"(5)

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Stewart Price, a memorandum in support of his habeas petition, the State's response thereto, Price's reply to the State's response, a rebuttal to the State's response filed by Price's counsel, and the State's supplemental response. (Rec. Doc. Nos. 3, 7, 17, 18, 21, 26). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that the instant petition be dismissed with prejudice.

## PROCEDURAL HISTORY[1]

Petitioner, Stewart Price, is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola,

---

[1]A portion of the procedural history was taken from the Louisiana Fourth Circuit Court of Appeal's opinion, State v. Price, 752 So.2d 995 (Table), No. 1998-KA-1018 (La. App. 4 Cir. 1999) (unpublished opinion). (St. Rec., Vol. 6).

Louisiana. On November 27, 1996, Price was charged by bill of information with five counts of first-degree robbery in violation of La.R.S. 14:64.1. He entered pleas of not guilty to all counts and, on May 22, 1997, proceeded to trial in Orleans Parish Criminal District Court. A jury found him guilty as charged on counts one, two, three, and five. He was found guilty of simple robbery on count four. On August 8, 1997, the State filed a multiple bill to which Price pled not guilty. On December 3, 1997, a multiple bill and sentencing hearing was held. The trial court sentenced Price to serve twenty years at hard labor without benefit of probation, parole or suspension of sentence on counts one, two, three and five. He was sentenced to serve seven years at hard labor on count four. All sentences were to run concurrently. Price was also adjudicated a third-felony offender, and the trial court vacated the sentence imposed on count one and resentenced him to life imprisonment at hard labor under the multiple offender statute.

On November 3, 1999, the Louisiana Fourth Circuit Court of Appeal affirmed Price's convictions and sentences. State v. Price, 752 So.2d 995 (Table), No. 1998-KA-1018 (La. App. 4 Cir. 1999). Pursuant to Rule X, §5(a) of the Rules of the Louisiana Supreme Court, Price had 30 days from November 3, 1999, until December 3, 1999, in which to timely seek writs from the Louisiana Supreme Court. See, e.g., Butler v. Cain, 533 F.3d 314, 317 (5th Cir.

2

2008).² However, rather than timely filing his writ application, Price, on November 30, 1999, filed a motion for an extension of time (St. Rec., Vol. 7). On December 15, 2000, the Louisiana Supreme Court denied his motion. State v. Price, 777 So.2d 474 (La. 2000). Following the expiration of his 30-day deadline, Price, on January 13, 2000, filed his writ application with the state high court, along with a motion for leave to file an out-of-time appeal. (St. Rec., Vol. 7). On January 12, 2001, the Louisiana Supreme Court denied Price's writ application and motion for an out-of-time appeal. State ex rel. Price v. State, 780 So.2d 1065 (La. 2001). Price did not file a petition for a writ of certiorari to the United States Supreme Court.

On January 17, 2001, Price filed an application for post-

---

²Louisiana Supreme Court Rule X, Section 5(a) provides:

An application seeking to review a judgment of the court of appeal either after an appeal to that court, or after that court has granted relief on an application for supervisory writs (but not when the court has merely granted an application for purposes of further consideration), or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal; however, if a timely application for rehearing has been filed in the court of appeal in those instances where a rehearing is allowed, the application shall be made within thirty days of the mailing of the notice of denial or rehearing or the judgment on rehearing. No extension of time therefor will be granted.

3

conviction relief with the state district court. (St. Rec., Vol. 4). Thereafter, Price filed a motion for leave to supplement his application. (St. Rec., Vol. 3). On November 20, 2001, the district court denied Price's application and supplement. (St. Rec., Vol. 3). On January 7, 2002, Price filed an untimely writ application with the Louisiana Fourth Circuit Court of Appeal. (St. Rec., Vol. 8).[3] On March 18, 2002, the state appellate court, finding "no error in the judgment of the district court," denied Price's writ application. State v. Price, No. 2002-K-0331 (La. App. 4 Cir. 2002) (St Rec., Vol. 8). Again, pursuant to Louisiana Supreme Court Rule X, §5(a), Price had 30 days, until April 17, 2002, to timely seek relief from the state high court. Price, however, did not file his writ application until June 29, 2002. (St. Rec., Vol. 8). On October 3, 2003, the Louisiana Supreme Court summarily denied Price's writ application. State ex rel. Price v. State, 855 So.2d 294 (La. 2003).

On or about January 31, 2003, while his first post-conviction application was pending before the state supreme court, Price filed an "Application for DNA Testing and Petition for Post Conviction

---

[3] Pursuant to Louisiana Uniform Rules of the Courts of Appeal Rule 4-3, Price had 30 days, until December 20, 2001, to timely file a writ application with the Louisiana Fourth Circuit. See Melancon v. Kaylo, 259 F.3d 401, 404-406 (5th Cir. 2001).

4

Relief. (St. Rec., Vol. 3).[4]  In an effort to prove his innocence, Price sought to have DNA testing performed on a cigarette butt which was collected at the crime scene.[5]  On October 8, 2003, counsel was appointed to represent Price in connection with his application for DNA testing and post-conviction relief.[6]

On April 14, 2004, Price's counsel filed an unopposed motion for DNA testing and, on that same date, Orleans Parish Criminal District Court Judge Calvin Johnson granted the unopposed motion. (St. Rec., Vol. 4).  On July 16, 2004, Price's counsel filed a "Motion for Issuance of Subpoenas," having been informed "that **the DNA evidence at issue could not be located** in the Courthouse property/evidence room." (St. Rec., Vol. 4) (Emphasis added).  On

---

[4] Price's "Application for DNA Testing and Petition for Post-Conviction Relief" is not dated.  However, in a September 12, 2003 order, the Louisiana Fourth Circuit Court of Appeal implicitly accepted Price's assertion "that on January 31, 2003, he filed an application for post conviction relief for DNA testing...." State v. Price, No. 2003-K-1186 (La. App. 4 Cir. 2003) (St. Rec., Vol. 3).

[5] On October 7, 2003, while his writ application for DNA testing was pending in the state courts, Price filed a federal habeas corpus petition unrelated to his request for DNA testing. (St. Rec. Vol. 3).  On February 5, 2007, Price's federal writ application was dismissed with prejudice. Price v. Cain, 2003-cv-3066, 2007 WL 433484 (E.D. La. 2007) (Chasez, MJ.), adopted (Feldman, J.).

[6] See October 8, 2003 letter from the district court advising Marrick Armstrong with the law firm of Adams & Reese that he had been appointed to represent Price. (St. Rec., Vol. 3).

5

that same date, the state district court granted the motion. (St. Rec., Vol. 4). On January 13, 2005, Price's counsel filed a "Motion for Inspection of the Evidence," seeking a court order requiring "the Crime Lab of the New Orleans Police Department to produce and inspect all evidence associated with Price's case "including but not limited to the burned cigarette butt." Counsel provided that such an inspection was necessary because in response to the issuance of subpoenas duces tecum, Kimberly Williams Butler (Clerk of Orleans Parish Criminal District Court), Shaun Benoit (Orleans Parish District Attorney's Office) and Captain Ernest Demma (Central Evidence and Property Division of the New Orleans Police Department) all "returned information that **they did not possess the DNA evidence sought**." (St. Rec., Vol. 4) (Emphasis added). On that same date, Price's motion was granted. (St. Rec., Vol. 4).

Following the above flurry of motions, Price filed with the Louisiana Fourth Circuit a pro se writ application seeking the enforcement of the district court's orders for production of the DNA evidence. (St. Rec., Vol. 4). On March 6, 2007, the Louisiana Fourth Circuit Court of Appeal granted Price's writ application for "the sole purpose of transferring relator's 'motion to enforce order' to the district court." State v. Price, No. 2007-K-0059 (La. App. 4th Cir. 2007) (St. Rec., Vol. 4). Thereafter, Price

filed a second writ application complaining that the district court had failed to enforce its previous orders for production of the DNA evidence. On June 25, 2007, the Louisiana Fourth Circuit denied Price's writ application, stating that the district court was taking measures to enforce its orders and noting that three hearings on the DNA testing issue had been set but were cancelled because Price was not transported to court. State v. Price, No. 2007-K-0696 (La. App. 4th Cir. 2007) (St. Rec., Vol. 4).

On January 11, 2008, another attorney was appointed to represent Price.[7] On April 23, 2008, Price's new counsel filed an application and memorandum in support of post-conviction relief seeking DNA testing. (St. Rec., Vol. 4). On May 21, 2008, the State filed a response to Price's post-conviction application and on June 3, 2008, Price's counsel filed a reply to the State's response. (St. Rec., Vol. 4).

On June 27, 2008, a hearing was held before Orleans Parish Criminal District Court Judge Byron Williams with respect to Price's post-conviction application complaining that contrary to Judge Calvin Johnson's April 14, 2004 Order, there had been no DNA testing of evidence. In response the State asserted that the DNA

---

[7]See January 11, 2008 letter from the district court appointing Mark A. Cunningham with the law firm of Jones, Walker to represent Price "in a Post-Conviction matter to be heard in this section." (St. Rec., Vol. 4).

testing had not been performed because the State did not have possession of the evidence at the time of Judge Johnson's Order. (Rec. Doc. No. 3, Exhibit C, June 27, 2008 Hearing Transcript). To refute the State's claim, Price presented an affidavit from Judge Johnson (Rec. Doc. 3, Exhibit B) which provided, in pertinent part:

> Before entering an order granting an Application for DNA Testing, Subsection C of Rule 926.1 of the Louisiana Code of Criminal Procedure required that I make the following specific findings...
>
> 1) There is an articulable doubt based on competent evidence, whether or not introduced at trial, as to the guilt of petitioner and there is a reasonable likelihood that the requested DNA testing will resolve the doubt and establish the innocence of the petitioner....
>
> 2) The application has been timely filed.
>
> 3) The evidence to be tested is available and in a condition that would permit DNA testing.
>
> By granting the order ... I made the findings required by Subsection C, **including the finding that the evidence is available and in a condition to permit testing, as reflected by my order which specifically states that the DNA evidence to be tested is to be "preserved and maintained in a condition in which it will be suitable for testing."** [Rec. Doc. No. 3, Exhibit B] [Emphasis added.]

After listening to counsel's arguments, Judge Williams determined that Price was entitled to a new trial. Judge Williams found that the cigarette butt existed in April, 2004, when Judge Johnson granted Price's motion for DNA testing, and that the State failed to preserve the evidence. (Rec. Doc. No. 3, Exhibit C, June

27, 2008 Hearing Transcript).

The State, in response to the above decision, filed a writ application with the Louisiana Fourth Circuit Court of Appeal. On March 23, 2009, the state appellate court granted the writ and reversed the district court's decision. The court reasoned, in pertinent part:

> Price's present counsel (who enrolled after Hurricane Katrina) argues that the cigarette butt was available prior to the storm, and he avers that the trial court granted the defendant's present application for post conviction relief because it found that the State's failure to preserve this evidence during the storm caused its loss. In support, Price's counsel presented an affidavit from former Judge Calvin Johnson, the presiding judge in 2004 and 2005, which counsel asserts showed that Judge Johnson remembered that the cigarette butt existed. This affidavit, contained in the State's present writ application, instead shows that Judge Johnson indicated that this evidence must have existed in 2004 because he signed an order for its testing and indicated he would not have signed the order unless he had determined that this evidence existed.
> Yet, the documentary evidence shows that at the time the court signed the order for the testing in April 2004, no one was sure where the cigarette butt was located, or if indeed it still existed. The motions for the issuance of subpoenas duces tecum were all issued after this order was signed, and as of January 13, 2005, counsel still did not know where this evidence was because on that date, he filed his motion for inspection of evidence directed to N.O.P.D.'s Crime Lab.
> Per La.C.Cr.P. art. 926.1(C)(3), one of the prerequisites for granting an application for DNA testing is that the evidence is available and in a condition to permit DNA testing. If, indeed, the cigarette butt was unavailable in 2004 and 2005, there was no basis for the trial court earlier to grant the motion for DNA testing [in] 2004, nor was there any basis to grant the defendant a new trial in 2008 based upon the district court's

9

> finding that the State was negligent in its storage of the cigarette butt. Therefore, because it does not appear that this evidence was available for testing in 2005 prior to Hurricane Katrina, there was no basis for the trial court to grant a new trial in 2008 for the "loss" of the cigarette butt due to the State's failure to preserve it from the ravages of the storm. Accordingly, this writ is granted and the ruling of the trial court reversed.

State v. Price, No. 2008-K-1455 (La. App. 4 Cir. 2009) (St. Rec., Vol. 9). On April 9, 2010, the Louisiana Supreme Court summarily denied Price's writ application. State v. Price, 31 So.3d 383 (La. 2010).

On March 11, 2011, Price filed the instant federal habeas application.[8] In his petition, Price challenges the accuracy of the Louisiana Fourth Circuit's March 23, 2009 decision. Price contends that the State failed to preserve the evidence thereby denying him his right to prove his innocence via DNA testing.[9] In

---

[8]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir.1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir.1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir.1995). Price dated his signature on the petition on March 11, 2011, which is the earliest date he could have submitted it to prison officials for mailing.

[9]The above pronouncement of Price's claim represents a compilation of Price's grounds two and three. Price also

10

its initial response (Rec. Doc. No. 17), the State asserts that the instant federal habeas corpus petition is untimely. However, in its supplemental response (Rec. Doc. No. 26), the State addresses the merits,[10] thereby arguably waiving its initial untimeliness defense. See Beck v. Thaler, 398 Fed. Appx. 65, 66 (5th Cir. 2010), citing Day v. McDonough, 547 U.S. 198, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006) (state's argument that a habeas petition is timely "could be construed as a deliberate waiver of the statute-of-limitations defense.")

**ANALYSIS**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal habeas corpus applications.[11] The method for calculating a petitioner's one-year period is set forth in 28

---

complains, in ground one, that the instant action is not successive. This issue, however, is moot based upon the Fifth Circuit's determination that Price, by virtue of filing this habeas petition, did not submit a successive action. In Re: Stewart Price, No. 2011-30450 (5th Cir. 2011) (unpublished opinion) (Rec. Doc. No. 6).

[10] In its motion for leave to file a supplemental response, the State explains that the change of its opinion regarding the timeliness of the instant habeas petition is based upon the argument set forth in the rebuttal (Rec. Doc. No. 21) filed by Price's counsel.

[11] The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996. Lindh, 521 U.S. at 322.

U.S.C. §2244(d), which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(2) provides that the time during which a prisoner has a properly filed application for post-conviction relief or other collateral review with respect to the pertinent judgment pending before the state courts is not counted against the period of limitation.

Price's convictions and sentences became final on December 3, 1999, when his 30-day deadline for seeking direct review expired. Butler, 533 F.3d at 316-318. While Price, within the 30-day time

period, filed a motion for an extension of time, such a pleading does not extend the 30-day time limit. Rule X, §5(a) specifies that "[n]o extension of time ... will be granted." See Boudreaux v. Cain, 2009 WL 4730706, at *3 (E.D. La. Dec. 9, 2009) (Moore, MJ.), adopted (Feldman, J.) (motion for extension of time does not toll the 30-day deadline imposed under La. Sup. Ct. Rule X, §5(a) as state law prohibits any extension of said deadline). Thus, under §2244(d), Price's direct review proceeding came to an end on December 3, 1999, and he had until December 3, 2000 within which to timely seek federal relief unless the one-year time period was tolled by the pendency of a properly-filed application for post-conviction relief or other collateral review. Price did not seek post-conviction relief during this one-year prescriptive period.

Price, however, argues that the end of his direct appeal review should not trigger the running of his one-year statute of limitations. Instead, his trigger date should arise from his second post-conviction proceeding in which he raised the same claim, that the State failed to preserve his DNA evidence, which he raises in the instant action.

Price's second post-conviction proceeding commenced on January 31, 2003, when he filed an "Application for DNA Testing and Petition for Post Conviction Relief." On June 27, 2008, the trial court granted Price relief, ordering that he was entitled to a new

13

trial because the State failed to preserve the evidence for DNA testing.  On March 23, 2009, the state appellate court reversed, and on April 9, 2010, the Louisiana Supreme Court denied Price's writ application challenging the Louisiana Fourth Circuit's finding that the evidence did not support Price's claim that the State failed to preserve the cigarette butt for DNA testing.  Price, 31 So.2d 383.

Price's counsel argues that April 9, 2010, should be the date when prescription starts to run because that is the date when the judgment Price is challenging became final.  (Rec. Doc. No. 22).  Using April 9, 2010 as the date prescription commenced to run, the AEDPA's one-year statute of limitations did not expire until April 9, 2011.  Price filed the instant action approximately one month earlier, on March 11, 2011.

In support of the above argument, counsel relies on Magwood v. Patterson, ___ U.S. ___, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010), along with In Re: Stewart Price, No. 11-30450 (5th Cir. July 11, 2011) (per curiam) (unpublished opinion) (Rec. Doc. No. 6).  In both cases, the respective Courts determined that petitioners' second habeas corpus petitions were not successive because petitioners were challenging judgments "distinct" from the judgments challenged in their first habeas applications.  As shown below, counsel's reliance on these cases is misplaced.

14

28 U.S.C. §2244(d)(1)(A) provides that the one-year period of limitation shall run from "the date on which the judgment became final **by the conclusion of direct review or the expiration of the time for seeking such review**." (Emphasis added). The Louisiana Supreme Court's April 9, 2010 judgment was on collateral review.

In his pro se reply (Rec. Doc. No. 18), Price points to Judge Williams' June 27, 2008 finding that the State failed to preserve the evidence. Though unclear, Price appears to argue that it was not until Judge Williams' June 27, 2008 decision that he learned the requested DNA evidence was missing, the factual basis of his claim that the State failed to preserve the evidence. Thus, Price contends that prescription should not commence to run until June 27, 2008.

28 U.S.C. §2244(d)(1)(D) provides that the one-year period of limitation shall run from "the date on which the factual predicate of the claim or claims presented **could have been discovered through the exercise of due diligence**." (Emphasis added). On April 14, 2004, Price's counsel filed an unopposed motion for "DNA testing of evidence - a partially smoked cigarette left at the scene of the crime...." (St. Rec., Vol. 4). On that same date the state district court granted Price's unopposed motion for DNA testing. (St. Rec., Vol. 4).

On July 16, 2004, Price's counsel filed a "Motion for Issuance

15

of Subpoenas," informing "that **the DNA evidence at issue could not be located** in the Courthouse property/evidence room." (St. Rec., Vol. 4) (Emphasis added). On January 13, 2005, Price's counsel filed a "Motion for Inspection of the Evidence," providing that in response to the issuance of subpoenas duces tecum, Kimberly Williams Butler (Clerk of Orleans Parish Criminal District Court), Shaun Benoit (Orleans Parish District Attorney's Office) and Captain Ernest Demma (Central Evidence and Property Division of the New Orleans Police Department) all "returned information that **they did not possess the DNA evidence sought**." (St. Rec., Vol. 4) (Emphasis added).

As noted above, prescription does not commence to run under §2244(d)(1)(D) on the date Price knew of his claim, i.e., on June 27, 2008 when Judge Williams found that the State failed to preserve the DNA evidence for testing. Instead, the statute of limitations commences to run on the date Price, exercising due diligence, could have discovered that the DNA evidence was missing, the factual basis of his claim. On July 16, 2004, as evidenced by counsel's motion for subpoenas duces tecum, the defense knew "the DNA evidence ... could not be located...."[12] The record further

---

[12]Counsel's knowledge in this regard is imputed to Price. See Wood v. Spencer, 487 F.3d 1, 5 (1st Cir. 2007) (lawyer's knowledge is attributable to client for purposes of §2244(d)(1)(D); Deskins v. McNeil, 2008 WL 3285754, *4 (M.D. Fla.

16

reflects that between January, 2005 and sometime in early 2007, no action was taken to pursue Price's claim regarding the missing DNA evidence. In the interim, Hurricane Katrina intervened, further exacerbating any efforts to locate the missing evidence. Accordingly, under the provisions of 28 U.S.C. §2244(d)(1), the instant action is time-barred. Price is not entitled to statutory tolling as provided for under 28 U.S.C. §2244(d)(2).

In addition to statutory tolling, the United States Supreme Court has held that the one-year statute of limitations period may be equitably tolled but only in "'rare and exceptional circumstances.'" Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991, quoting Davis v. Johnson, 158 F.3d 806 (5th Cir 1998), cert. denied, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999). It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999), cert. denied, 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), citing Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996). The evidence

---

Aug. 8, 2008) (imputing attorney's knowledge of facts to petitioner); Sorge v. Buss, 2011 WL 720078, *4 (N.D. Fla. Feb. 22, 2011) (same).

must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit of §2254 relief.  Coleman, 184 F.3d at 403.

Price offers no basis for equitably tolling prescription nor has this Court's review of the record uncovered any such basis.

Alternatively, even if Price's federal petition was not untimely, he nevertheless would not be entitled to habeas relief because his petition is without merit.

The underlying basis of the instant habeas application is Price's claim of innocence, a claim he allegedly could have proven via DNA testing.  However, "the Fifth Circuit has noted that absent an independent, substantive constitutional violation,'... claims of actual innocence are not cognizable on federal habeas review.' " Byles v. Cain, 2007 WL 955339, at *2 (E.D. La. Jan. 26, 2007) (Chasez, MJ.), adopted (Lemmon, J.), quoting Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir.), reh'g in part granted on other grounds, 351 F.3d 156 (5th Cir.2003), citing Dowthitt v. Johnson, 230 F.3d 733, 741 (5th Cir. 2000), cert. denied, 532 U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001).

Price's denial of DNA testing does not constitute an "independent, substantial constitutional violation".  It is well-established that a prisoner has no constitutional right to post-conviction DNA testing.  Richards v. District Attorney's Office,

355 Fed. Appx. 826 (5th Cir.2009), citing District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52,73-74, 129 S.Ct. 2308, 2323, 174 L.Ed.2d 38 (2009); Davis v. Cain, 2008 WL 5191912, at *6 (E.D. La. Dec. 11, 2008) (Knowles, MJ.), adopted (Zainey, J.); Johnson v. Cain, 2011 WL 891040, at *5 (E.D. La. Feb. 11, 2011) (Moore, MJ), adopted, 2011 WL 915182 (E.D. La. March 14, 2011) (Lemmon, J.). Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the instant application for federal habeas corpus relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[13]

---

[13] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.

New Orleans, Louisiana, this 23rd day of October, 2012.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE